Thank you, Your Honor. Joel Arden. I'm joined by Plaintiff Glenn Morgan. When the Court below entered the final order dismissing this lawsuit, it ruled on two claims. But one of those two claims was already moot, and the other claim does not create subject matter jurisdiction under the Supreme Court's 2021 TransUnion decision. Mr. Morgan absolutely disclaims that he has suffered any injury in fact, and there is no fact allegation anywhere in the First Amendment complaint to show a concrete injury. Whatever constitutes injury under Article III of the United States Constitution, that didn't happen to Mr. Morgan. He seeks to represent a class of similarly situated persons who, like him, did not suffer an Article III constitutional injury. That statement alone compels remand, a rule this Court confirmed. Well, Counsel, whether it's characterized as abandonment or mootness, the sale allegation is still part of the First Amendment complaint, unless we find that the District Court abused its discretion in denying leave to amend, right? No, Your Honor. Well, it is in the text of the First Amendment complaint, but it's not part of this litigation. A party can abandon a claim in virtually any manner, and this Court confirmed that in, for example, a matter of Gigawatt, which was an unreported case at 2022 Westlaw 17883793, December 23rd of 2022. The Court remanded a case where, based on a party's concession at oral argument to this Court, that it had abandoned one of its claims. Parties can abandon claims, and we have those sort of collected in ER 236, a whole series of ways in which parties can abandon claims and take them out of the Court's consideration. Argument at the Court's discretion in managing these cases are pretty broad, but let's assume that we agree with you and we look only at the procurement allegation the District Court gave numerous alternative basis for granting the motion to dismiss. So, what's your best argument on where the District Court went awry? As to federal jurisdiction or as to the merits of the claim? That's very easy, Your Honor. I call Mr. Morgan all the time. He's a friend and a client. My phone number appears in his telephone bill. His phone number appears in mine. The text of the statute says that if someone gets that, and Twitter concedes this, if a black hat hacker goes and gets it from Verizon, it's a telephone record. But they say that's the only way it's a telephone record. That limitation is nowhere in the text of the statute. This is a very broad, classic state consumer protection statute. Any person who procures that data from any source, there's no source limitation. There's no person limitation. It's not getting the data from a specific target. It's not a specific kind of person getting the data. Someone who procures that data... You keep saying data, but what you're talking about in your lawsuit is the telephone number, right? Yes, and that is in the definition at 9.26a.145b. Telephone record means information, data. I could use the word information instead. Retained by a telecommunications company that relates to the telephone number dialed by the customer or the incoming number called directed to a customer. Other data related to such calls typically contained on a customer telephone bill. So even Twitter concedes that when Mr. Morgan calls me and his phone number appears on my bill, it is information retained by a telecommunications company that relates to the telephone number dialed. The statute then says a person, not a black hat hacker, a person is guilty of the unauthorized procurement if the person by fraudulent, deceptive or false means obtains the telephone record of any resident of the state to whom the record pertains. So these are very, very broad definitions. They cover procure, by the way, in subsection 5c, obtained by any means, whether electronically, in writing or in oral form, with or without consideration. I don't think you could find a more broadly written consumer protection statute in the revised code of Washington. And what Twitter's argument is, is that it really doesn't mean what it says and that the court should impose excessive limitations on it. That the only way to violate the statute is to get multiple copies of from a telephone carrier, telecommunications company. But that's not at all what the statute says. Telecommunications companies do have specific under 926A142B, there's a specific limitation on violations that can be made by telecommunications companies, but that limitation can't be found in Section 1B, the wrongful procurement section. And so the argument there on the merits is that the statute is broad, it should be read broadly. The Washington State Supreme Court routinely says that consumer protection statutes should be broadly construed to effectuate their purpose. And to limit this, as Twitter would have it limited, that the procurement has to be from a telecommunications company and of a phone bill, essentially, is not found anywhere in the text of the statute. Any person who procures through any means that form of information. They're relying on a specific statutory provision that defines the scope of what the statute means by telephone records, right? That's subsection B. Subsection 5B, yes, 145B. And then the other point I would make to that, Your Honor, is that it is routine in the Washington State Supreme Court, even if they were to find, even in cases where they find that the text of a statute is unambiguous, they do routinely nonetheless cross-check their statutory construction by looking at the final bill report. The final bill report in the Washington legislature is the most common document, every bill has one. It's the crib sheet that accompanies the bill through passage. And the Washington Supreme Court routinely looks at that document, even in cases when it says the statutory text is unambiguous, and we've cited some of those, it will look at the final bill report as a sort of confirmation of its construction. Unable to find any case in the of the state of Washington in which a court has construed a statute to contradict the final bill report, but that was the construction offered by the court below. The final bill report, like every bill report that accompanied this statute from its first iteration, says this is a bill to protect cell phone numbers. And that's consistent with the definition of telephone record, it's consistent with how those records are created, and it's consistent with the the wrongful procurement portion in the back. I would reserve time if the court doesn't have more questions, but I would reiterate that procuring a phone number without more is not an Article III constitutional harm. There's no case post-transunion that says something like that, and the abandonment of the sales claim dispositively disposes of that aspect, whether it is found in the Second Amendment complaint or not. I think Gigawatt is one of the cases that says that very clearly. And again, confirmed by, I think you'll see that as well, the Federal, the Seventh Circuit has said that in Thornley v. Clearview A.I. at 984 Fed 3rd 1241. You can actually have, avoid federal jurisdiction by having a class definition that says all persons not harmed. Mr. Ard, I know that in terms of avoiding federal jurisdiction, there's been a collection claim and a sales claim, and obviously the amendment jettisons that so that you can avoid federal court in terms of Article III standing, but it's my understanding that the purpose of the Washington statute essentially was to protect a substantive privacy right, was it not? That's the underlying purpose of the legislation, was to protect a substantive privacy right. No, Your Honor, I would say the Washington Constitution has substantive privacy protections. The Washington Privacy Act has substantive privacy protections. This is protecting something that is, while not expressly public, it's also not private. It's not. This court has, has repeatedly, according to my research, the Facebook decision with the Ninth Circuit in 2020 and some others essentially has recognized that that privacy right creates an injury in fact, which would establish Article III standing if there's an injury in fact, there is Article III standing, then would that not be the case? No, I don't think so, Your Honor. So the Facebook biometric, it's the Illinois BIPA cases, post-2021. It was Facebook versus internet trafficking litigation. That's the case I'm looking at. 956 up there, not 589, an opinion by this court in 2020 that I think notes that the Ninth Circuit consistently has recognized a substantive privacy right and creating an injury in fact, thereby establishing Article III standing, even if you proceed on your collection claim and not your sales claim. But there's no common law privacy interest in information that is not retained. And so a cell phone number is by definition only useful if it's told to other people. If I want someone to call me, I have to give them my cell phone number. So there's not a common law privacy right in this. So the statute is protecting something that is not protected by the Washington Privacy Act, the privacy protections of the Washington State Constitution, not protected by the common law right to privacy. It's a statutory protection that's not found in, that's not a privacy interest. It's a pure statutory interest. Thank you, Your Honor. Good morning, Your Honor. Good morning. I think this case can sometimes seem kind of complicated because of the sheer number of orders that have been appealed. And so there's a lot of moving pieces. But I actually think at its core, this is a pretty simple case. And I think the easiest way to see your way through it is to start where Judge Bennett did, which is honestly where he spends so much of his appellate brief trying to work towards, which is just the allegations about Twitter collecting his cell phone number and just the standing implications of those. Honestly, I think it's presented by appellant as if it's his best argument. And I think honestly, it may be. But I think if you look just at those, it actually makes the case very simple. Fundamentally, he's in this weird position where he agrees that the sale of statutorily protected information does implicate a privacy interest sufficient to confer Article III standing. But he then argues the attainment of that same information does not. And honestly, I think that's just absolutely backwards. The reason that a sale of private information implicates privacy principles and hence Article III standing is because it leads to someone else's attainment of that same information. So if I sell you my brother's cell phone number, the reason that's a privacy interest at all is not because there's some privacy right against sales. It's because that leads to you getting information without his ability to control it. And so I think once there's this recognition that sales and attainment are just flip sides of the same coin, they are just like the two different sides of that same transaction, it makes the standing analysis pretty simple. Because plaintiff agrees, and I think rightly, that selling protected information does implicate a privacy interest. And once that's in place, I think it's obvious then that the attainment of that same information must as well. I think that's the intuition here. And legally, this Court's cases line up behind that. Your Honor mentioned the Facebook case. I think this actually goes back at least to the Eichenberg case, which is the ESPN video history case, where the analysis basically runs that, look, Congress enacted the statute, the VPPA. And in doing that, Congress, I think the quote is, codified a context-specific extension of the common law right to privacy in this video watch history information. And the analysis is, look, Congress essentially extended this common law privacy right. The allegation is that there's been a violation of that privacy right. And therefore, there's Article III standing with no more analysis necessary. And I think, you know, it's not just Eichenberg. It's a Syed case, the district court cites, which is about credit reports. But I think that basic analysis disposes of Appellant's arguments here. You know, he makes the argument that a cell phone number has utility precisely because it is shared. I think the same is true of the credit reports in Syed. The reason that a credit report is useful is because you can share it with someone and they can get some information. But as this Court recognized, that doesn't mean that there's no privacy interest in those credit reports at all. There's still a very important privacy interest in limiting the circumstances under which they're shared. I think that also disposes of the argument that there's not a common law privacy protection for cell phone number. The same was true of the video watch history at issue in the Eichenberg case that Congress protected with the VPPA. In fact, that's why Congress passed the statute in the first place. And that's the case with a lot of these statutes, right? You know, the common law exists and there's a certain set of privacy protections. And then over time, the legislature recognizes that those same privacy principles need to be extended to a new context. And I think what this Court's case is recognized is that when Congress or the state legislature in this case does that, it is extending those privacy, those common law privacy principles. And so even if a cell phone number would not have been protected at common law because cell phones didn't exist, that doesn't mean that there's not a substantive privacy right at issue. The point of the analysis is that just as a substantive privacy right at and hence gives rise to Article III standing, the same is true when the legislature acts to recognize that that same substantive privacy interest should extend to a new context. The analysis runs exactly the same. And I think that's what this Court's cases show. And I think once that's in place, then the bulk of his standing argument actually falls away because so much of it is not truly about standing proper, but is about all these threshold arguments about, you know, which allegations should the district court have considered or not, or whether plaintiff successfully mooted his own claims by agreeing that they were meritless. I think that really falls out because at the core, I think all agree that these allegations about Twitter obtaining his cell phone number without his knowledge or permission are in the case and are properly considered. And I think this Court's cases make crystal clear that those allegations just considered by themselves give rise to standing. And so you move past that part of the analysis. And quite frankly, I don't really take him as resisting the application of Eichenberger or Eichenberg. It appears once in his opening brief, just to note that that's what the district court relied on, and then he doesn't respond to it. He doesn't further address it in either of his briefs. And as to the two Outer Circuit cases that he mentioned in his argument, which appear briefly in his reply, I think on pages 12 and 13, those actually say exactly the opposite of what he suggests. Those are BIPA cases that deal with both collection and sales claims, or collection and sales issues. And what they say is basically what I've been saying here, which is that the collection piece is easy. The Seventh Circuit case looks at the Seventh Circuit's history of BIPA claims and says, look, we long ago decided that the collection of protected information is obviously a privacy injury. The question in that case was whether a sale is as well. And it analyzes it by looking in the same way that I've described as this kind of derivative privacy interest. It's because if the obtainment is a privacy interest, then the question is, well, does a sale do that as well because a sale facilitates obtainment? And then the District Court case thing from the Southern District of Illinois, I think he suggests that it remands the obtainment claim and keeps jurisdiction over the sale claim and actually does exactly the opposite. And so I think the basic point here is that the intuition in the case law is kind of all in alignment here, that the core of the privacy injury is the attainment of private information and that the sale piece is kind of derivative. And so to the extent that either of those is harder to establish standing for, it should be the sale piece. And given that there's agreement on that, I think it's very easy to get to the attainment piece. So that's, I think, about 75% of this appeal. I think the other 25% goes pretty quickly. As to the timeliness of removal, I don't think there's a serious dispute that there's no time restriction unless one of the two 30-day clocks in 1446 B1 or B3 is triggered. And I don't really take plaintiff as arguing that either was. His reply certainly doesn't mention either of those provisions. Instead, it makes this kind of freestanding argument that because of Twitter's extrinsic subjective knowledge that the case would be removable, it had to remove within 30 days of obtaining that knowledge. I don't see that as scanning with the text of the statute. And I think this court's cases, in cases like Harris and Roth and Cuxhausen, squarely foreclosed that. And then just a brief word as to the merits, which I think is, frankly, the easiest part of this. We showed, I think, pretty clearly in our brief, and I don't take him as really disputing this in his reply or even at argument today, that the district court gave four independent grounds for its merits ruling. And on appeal, he contests at most two of those. And so I think, frankly, the easiest way to resolve the merits is just to say, whether you say it's not properly appealed or whether there's independent grounds that aren't challenged on appeal, I think the result is the same, that even if everything he says on appeal is right, the district court's judgment is still correct. And so I think I'm happy to go into the merits if the court has questions, but I think the kind of simplest way through the merits part of the case is just to hold that he didn't properly preserve that appeal. You know, I'm happy to take questions from the panel. On the two grounds that he forfeited or waived? Correct, Your Honor. If the panel has questions, I'm happy to take them, but I'm also happy to return a couple of minutes to everyone's day and just ask that the panel affirm the judgment of the district court. Thank you, Your Honors. Okay. All right, here. Uh, very briefly, in terms of standing, uh, a plaintiff can eliminate federal jurisdiction in almost any manner. That was confirmed just four weeks ago by Royal Canin at the Supreme Court. We cited that in the 28J letter. This court has said the same thing in matter of gigawatt. The Seventh in the First Amendment complaint is consistent with this court's decision in Phillips v. U.S. Customs. There has to be something more. There has to be a concrete injury. And where Mr. Morgan disclaims a concrete injury, there's no Article III jurisdiction. That's also consistent with the 2022 case from this court, Sanchez v. Los Angeles, 39, Fed Fourth, 548. And so, again, uh, it doesn't matter whether or not the court entered the Second Amendment complaint, uh, when the sales claim is abandoned and moot. The other one is, as the court below already held, not an intrusion upon seclusion. She said correctly that the allegations in the complaint do not address the privacy interest of intrusion upon seclusion. The only thing where the court found a privacy interest was in reselling the documents. And so, with no concrete harm coming from taking the phone number, there's no Article III jurisdiction. Counsel, your clock time is up. Yes, it is. Thank you very much, Your Honor. I was not noting that it was going up. I thought it was still going down. If you need another 30 seconds. Not unless you have a question, Your Honor. No, no question. Morgan v. Twitter shall now be submitted. I thank counsel for their arguments and you'll hear from us on that case in due course.
judges: GOULD, NGUYEN, Bennett